Good morning and may it please the court. My name is Debra Pierce. I'm here today as for appellant Mr. Lee. I'd like to cover two points in my time today. Can you hear me? First, in the court below, application of this enhancement, the 2D1.1B12 enhancement, was always anchored solely to Mr. Lee allegedly having maintained Mr. Negrato's motorcycle shop. The government didn't carry the burden of proving that Mr. Lee maintained that shop. Therefore, the enhancement was improperly applied. Second, the government was very deliberate in this position. Even after Mr. Lee's objection that pointed out the appropriate considerations for what constitutes maintain, it doubled down. It stuck strictly to he maintained Mr. Negrato's motorcycle shop and never raised these two new arguments that it has raised after a brief was filed. Well, but they were traveling under his admission to the factual basis, correct? Pardon me? Mr. Lee admitted in the factual basis that he used and maintained with Mr. Negrato this motorcycle shop. Well, I'm not sure the admission is so clear. I think the government assumes an admission, assumes an admission is enough, when maintain was never defined. Is this a fact finding by the district court that we review for clear The court relied strictly on this statement in the factual basis, as pretty much probation and the government did as well. The question, though, is whether, is it a fact finding? I suppose it would be, except that it's not supported. And the court cannot rely upon statements in a PSR that are not supported by the factual, the evidentiary basis. So that's part of the problem. So your argument would be it was clearly erroneous for the court to have applied the enhancements? Well, that, and I would add that it wasn't applied. The guideline was not applied correctly either. So we have some de novo review going on here, too, as well. The alleged admission, it turns upon flip-flops in what's described. In some parts, it's opened or maintained. In other parts, it has two actors plus used and maintained. And then the description is that they used it to distribute. Nothing more. So What is the word? Used and maintained? That, yes. It will say, for instance, That is the sentence. It's based on used and maintained. It is. It says Mr. De Grotto, and at one point it adds Mr. Martinez, used and maintained. And then it says, How did they use and maintain? Because they used the shop to distribute. And then, further, the comment to the for the purpose of part of the prong of the enhancement is given. But the maintained is never mentioned. But they agreed to use and maintain or used or maintained, right? Right. Well, on this record, it's pretty clear that Mr. De Grotto did maintain the shop. He had the possessory interest. He was controlling the place. He was negotiating, for the most part, the deals. He was handling the drugs. He was instructing people to come handle the money. But it was also very clear on the factual basis that Mr. De Grotto and Mr. Lee were acting in concert. I mean, they were hand in glove. Clearly, Mr. Lee used the motorcycle shop himself. But isn't it enough on the factual basis to conclude that as co-conspirators, if one of them maintained the motorcycle shop, both of them are culpable for that? Well, the conspiracy count is only to the distribution. It is not to the maintaining. So count one is conspiracy with, I think, to possess and or to distribute. Oh, but count eight, he admitted that he used and maintained the motorcycle shop. Lee did. He admitted that. In the context of the sentence, he admitted that Mr. De Grotto and he used and maintained. I'm talking about the factual basis for his guilty plea. Right. And there was no plea agreement in the case. I just thought I'd make that clear. And in fact, even in count one, the conspiracy count, the motorcycle shop is prominently featured in that factual basis again, right? In the beginning. And it lays it all out. De Grotto, the co-conspirator, was the co-renter of the shop. And so I just wonder, wouldn't we affirm based on the record before us, particularly if we're looking at the district court's fact findings under clear error? Well, then you would have to assume that an admission alone is enough. And for this particular defendant, the factors under note 17 and this court's precedent governing the word maintain, which is its own prong under the enhancement, simply are not substantiated. So I think we cited in our brief, reply brief, pages 6 and 7, opening brief, pages 16 and 17, that there are several cases out of this is insufficient to establish a legal element. And so that's all we have here. Because when you back up and you look at the facts, there's just not evidence there that Mr. Lee exercised dominion and control over this shop of sufficient continuity and duration. So what do we have in the factual basis? There's two times he distributes. Now, the first time, I will concede, is a bit problematic. He does ask some UCs to leave. So that's just one time. Continuity and duration, though, is what we're looking for here. The second time, he gets the call. Mr. Negrato tells him what he needs. He gets it. He delivers it and he leaves. That's it. Then the government relies on a third time, which is really pretty interesting. I lost my third time. Here we go. In this case, he gets another call from this one does not turn into a distribution. He gets a call from Mr. Negrato saying that Mr. Negrato has been approached by the CI and the UCs to do another deal. He says, will you come in? And he does. He gets there. And this is, I guess, the alleged control by Lee. The UC actually asks him to step away and go outside. So in that example, the UC is controlling the premises, not Mr. Lee. He just accompanied him outside. That was it. That deal ultimately did not even happen, and he was not charged with it. So we've got very slim reads here on which to decide whether he actually maintained the premises. Now, I understand the government has raised an alternative new argument based on relevant conduct that I'm happy to try to address if you'd like, but our position is that that argument has been forfeited. There was ample opportunity. So that was basically what my maybe inarticulate question earlier was trying to get at. It's apparent in the factual basis to which he admitted, whole cloth, that they were acting in concert and that Negrato, at least Negrato, maintained the motorcycle shop. Can't we affirm on that basis whether the government raised it or didn't raise it in the district court? Well, I can tell you it's not — there's no mention of relevant conduct or 1B1.3 at all in the PSR. I'm not talking about the PSR. I'm talking about the factual basis. The district court found, based on the admission in the factual basis, that he used and maintained the shop. But my question, I guess, is, back to relevant conduct, call it what you want, it's apparent in the factual basis these were two co-conspirators actively conspiring in this shop, and Negrato indisputably had dominion control, keys to the place, all that sort of thing. Isn't that enough to say we can affirm this enhancement? Well, now we're moving into does relevant conduct apply to this particular enhancement B12? I know the general rule is unless it's specified or otherwise clear from the context of the enhancement, generally relevant conduct does apply. But I would submit to you that sometimes the sentencing guidelines, and this is one of them, uses different wording to signal when a defendant should be responsible for the relevant conduct of someone else who's involved in the conspiracy, per se. So, for instance, in 12D1.1B, there's a number of provisions there. Summary and passive voice. For instance, B1, dangerous weapon was used. Sometimes it will focus on the offense. If the offense involved X. In B7, it's really interesting, it says if the defendant, just like B12 says, if the defendant did X. But B7 says if the defendant, comma, or a person for whose conduct the defendant is accountable under 1B1.3 relevant conduct. Expressing inclusion of it there with the combination of the words if the defendant. We get to B12, it says if the defendant maintained. There's no inclusion there. So it is different. And I would submit that when viewed in its entirety, this is otherwise specified, because it is focusing on if the defendant. And it's not including the relevant conduct provision in contrast to subpart 7, which expressly does so. And we know the note as well has the maintain and then the for the purpose of prong. Each of one. The enhancement here. Pardon me? Was there a length of the sentence enhancement here? The link? Link, L-E-N-G-T-H. I mean, how much more? It was extra two points. Two more points. And it did change his guidelines range, but not — it didn't change his mandatory minimum, but the judge did sentence at the lowest. Years, months, did it add to his sentence? Probably 10 months to a year, if I had to give you my best guess. Yes. About 10 months. Because of the mandatory minimum. That's what is involved in this case. Exactly. Right. And this Court in Lord recently, which is another case based on the maintain element of the enhancement. What kind of sentence did he get, actually? He got 195 months. So, he's got a while before this case actually has a realistic bearing on his sentence, I guess. It's true. He had no criminal history, did he? No criminal history. Troubled childhood. Lost his mother in a drive-by stray bullet type of a situation. The only thing I saw — Why did the judge hit him so hard? Well, he really — Judge Fallin really didn't. What he did was, because of the plus 2, it established a bottom of the guidelines range of 135 months, but he had a gun count. So, that was a mandatory 60 more months. So, he gave him the 195. He could have gone higher, I think to about 235 if he had wanted to. But he expressly said in his sentencing, I'm picking, in response to the motion for downward departure, I'm picking the lowest, the bottom of the guidelines. Now, if we don't have the plus 2, his range changes. It does go lower. And at that point, the judge might have been incentivized to give him the 180-month mandatory minimum. So, would you have us vacate the sentence and send it back for resentencing? Would the government be able to make these alternative arguments that it didn't make before? It depends on the scope of what this court orders. What would be the right answer for us to order? My position is that it should be limited to what they argued below. I mean, when a defendant doesn't make an argument in response to sentencing, they're held accountable for it. They constantly hung their hat on this one admission and this one type of enhancement. Didn't raise the other two at all. Had 14 days to respond to the PSR. We know in cases I cited in brief, I think it was Jackson, Smallwood, Somewhat, and Solis, this court has held that when the government fails to raise additional arguments or to object to a PSR, it has waived those arguments. And I don't see why the government should get a second bite at the apple when a defendant does not. I'd also like to point out, just going back to the relevant conduct, this court's case in Morgan is pretty important. Morgan is a 1997 case. Morgan handled the term maintained in the context of the Section 856 Genesis statute for this enhancement. The Genesis was that you had to open or maintain. It didn't have the longer verb list that now appears in Section 856, which now includes use as well. At that time, this court was pretty clear that you have to have something more than just you have to have dominion and control of a continuity and duration. You can't, for instance, just have possession and distribution, because that's merging the two elements of the enhancement. You need maintain, which is possessory interest or control over sufficient duration, and then separately for the purpose of, which focuses on the use. And the use is, even per the note itself, note 17, it is the manufacturing and distribution portion. This court relies on clavis in Morgan. Clavis hits this issue head-on. It says it cannot just be regular distribution out of premises. You have to have sufficient maintenance and control. And furthermore, at the time of the statute, I said the statute was a little more akin to the enhancement. So the enhancement is created in 2010, only has the word maintain. By then, the statute, 856, the Genesis, had already added those extra words, such as rent, lease or use. But Congress directs that it's strictly focused on maintain. And this court in Morgan found that that signals you're looking for the supervisor, the one who's in control, basically the head honcho. And I wish I could give you the page on that, but I'm happy to give that to you as I see my time is running out here. Thank you, Counsel. Sure. Thank you. Mr. Trumwell? Yes, sir. You may proceed. May it please the Court? Mike Trumwell on behalf of the United States. The question before this Court is whether the defendant who pled to both using and maintaining a drug premises dealt a pound and a half of methamphetamine from those premises and negotiated a future deal of the same drug at the same premises to receive the enhancement. The answer is yes. And the easiest way to get that answer is answering your question, Judge Wilson, and that on the face of the factual basis, you can affirm. This is a 13-page factual basis in which he was charged, most importantly, in Count 8, under an 18 U.S.C. Section 2, which is the aiding and abetting statute. On its face, which begins at ROA 103, talking about the conspiracy to distribute methamphetamine, and most importantly, at ROA 110, when he says, and I quote, Lee admits that he unlawfully and knowingly used and maintained a motorcycle shop. But that's it. I disagree, Your Honor. That's all the district court quoted when the district court was about to impose the sentence. That's it. And the enhancement, I mean, the admission is that he and Negrato did unlawfully and knowingly use and maintain a motorcycle shop. And then it talks about using the shop to do these deals, which undoubtedly he did. He admitted to that, that the factual basis develops that. But there's nothing else in the record, is there, that shows that Lee maintained the shop? I think there is, Your Honor. What else is there? So specifically in Commentary Note 12, it highlights four things the court should look at. Number one, the possessor interest. And we'll concede that Mr. Negrato rented the shop. But number two is supervisory control, and that's important. In the March 2021 deal, Mr. Lee arrives at the shop, sees undercovers he does not recognize, and orders them out of the shop so that he can then make the deal on his terms. Defense counsel cited United States v. Morgan, and that's important. United States v. Morgan, there's one deal at an apartment. The defendant walked in, saw a co-conspirator on the couch, asked the co-conspirator to go to the closet, get the drugs, and come back. There the court said that it's a sufficient level of supervisory control. Here we have more than that. We have the defendant actually dictating how the deal goes down, and then just four weeks later, back at the shop, when he has proposed or proffered to sell five pounds of methamphetamine, how that negotiation occurs is on Mr. Lee's terms. He chooses where in the premises the conversation occurs and who is allowed at that conversation. This is far more supervisory control than we've seen and has been upheld in United States v. Morgan. What's the legal definition of maintenance? Is that what you're talking about now? I am, Your Honor. Tell it to me again. Commentary note 12 says there's a non-exhaustive list of things this court should consider, but it highlights four things. Number one is the possessory interest the defendant had in the premises. Number two is the— Okay, stop. Yes. All right. So what evidence is there in support of a conclusion that he had possessory interest? What's the evidence? We're not hanging our hat on the possessory interest. Ah, okay. Go to the next one. Supervisory control. What's the evidence that he had supervisory control? Is that what you just told me about, where he told where the deal was going to happen in the room? So the deal that happened in the room—  I apologize. That evidence is supervisory control of the shop because he could say where the deal was going to take place inside the shop.  Anything else in connection with that one? Yes. And as well as the future five-pound deal, he determines where that conversation occurs and who's allowed to be in that conversation. Where the conversation happens inside the shop? He moves from the—all individuals are in a room and they move to the outside of the shop to discuss because he didn't want certain people to be involved in the conversation. That's evidence of—  All right. What's the next factor? The primary purpose the defendant has for the premises. All right. What's your evidence to support that? All three times that the defendant went to this shop, he was there to do illegal drug deals. There is no evidence in the record that he ever went to the motorcycle shop for anything that was not distributing drugs. And the fourth premise, if I may continue, Your Honor— You may. —is the relative use of the shop for both illegal and legal activities. So there's, frankly, a lot of overlap with the third prong, which, again, there is no evidence that Mr. Lee ever went to this shop for anything but furthering this drug conspiracy and the drug distribution. So that's evidence that he maintained it. It is evidence that he maintained by the commentary note. What's also important is that he was charged under Section 856. And this Court, in both Morgan and Guzman-Reyes, said there is a difference between 856 and the B-12 enhancement. However, it is informative to look at how 856 is defined in the jury instructions. And there, in the jury instructions on 856, it cites the things that I just cited, that B-12 cited, but also said specifically you should look to whether or not the defendant can direct activities or direct people. And here we have him directing people on the March deal to who is allowed in the shop and who's not allowed in the shop. And it's important to remember that United States v. Morgan simply asking a co-conspirator to get off the couch and get drugs was sufficient for this Court to affirm. I believe the control in which the defendant, Mr. Lee, had over this shop is greater than that level of control. What do we do with his co-conspirator's seemingly undisputed maintenance of the premises? So, number one, I think I don't have to get to relevant conduct. We can if you'd like, Your Honor. But when there's undisputed maintenance of the shop by Mr. Negretto under aiding and abetting, that clicks. But I think it's important to realize that there was a third defendant in this case, Mr. Martinez, who was not given enhancement, which shows you why this enhancement applies in this case and not every case. Mr. Martinez simply used the shop by being there. He was given drugs to be there. Sometimes he counted the money. Sometimes he counted the drugs. And the fact that he didn't receive the enhancement shows why this enhancement applies. And United States v. Morgan, which cites the Seventh Circuit, said this enhancement is designed for the entrepreneurial drug dealers, the kingpins. Mr. Lee, in the factual basis, signed off on being the plug for the operation. This enhancement is designed for people like Mr. Lee, who used the shop to further a large-scale drug distribution. And in United States v. Guzman-Reyes, this court cautioned, to so closely or too tightly look a possessor in interest creates a perverse incentive where a defendant would simply just put a motorcycle shop, a motel, and somebody else's name. Mr. Lee was smart enough to try and distance himself from the operation, but I think the factual basis is clear. He ran this operation. He was the plug for this operation, negotiated the deals for this operation, and all that occurred at the motorcycle shop. What's our standard of review? Clear error, Your Honor. It is an application of a guideline, so this court would have to be firmly convinced that the court made a serious error or it was not plausible that the court came to this conclusion. What I'd also like to highlight is the continuity to which Mr. Lee had this shop. In United States v. Morgan, it noted that the fact that one deal happened here and another deal happened two and a half months later at the same shop showed the continuity. The same thing happens here. Over a six-week period, we have two deals and a negotiated deal. I also think it's important to highlight that the second time there's a deal at this shop, individuals arrive, Mr. Lee arrives, they negotiate a deal, Mr. Lee leaves to get the drugs and specifically instructs those purchasers to stay at the shop. He doesn't say, I'm going to get the drugs, meet me at Walmart, meet me anywhere else. He says stay at the shop because the shop is his place. That is where he deals drugs, showing that his level of continuity of control and dominion meets the definition of maintenance under the United States Sentencing Guidelines. Did the record suggest that he did business at other places? The record does not suggest that, Your Honor. There's no evidence he dealt anywhere but this motorcycle shop for the methamphetamine. And also, I do want to answer your question, Your Honor. You asked about his sentence. He did receive 195 months. That was a base level 33 with a criminal history score of 1, so that was 135 to 168. Without the enhancement, it drops to 108 to 135, so we're actually talking about 24 to 25 months. How much? 24 to 25 months. That's a good bit. And 195 sentence, which was the bottom of the guidelines. And the court noted was the… That's a good bit to him. It is, but it does come legally and properly through the enhancement. If there are no other questions, Your Honor. Thank you, Counsel. Rebuttal. I appreciate my colleague's correction on two things. I was wrong about the time frame involved here, even though we do have the 180-month mandatory minimum. Secondly, I've been referring it to note 17 to the enhancement. It's actually note 12, so I stand corrected. I encourage this court to look carefully at the factual basis, not only for Mr. Lee, but also for Mr. Negrato and Mr. Martinez. The record's being a bit overstated here. Mr. Lee did not walk in there and act like he was in control of this place. He got the call from Negrato, who had already negotiated these deals, the quantity and the price. He would ask him if he wanted to deliver the drugs. He would agree. Sometimes Mr. Negrato called other people, as is clear from the factual basis as well. So he's not quite the player that he is. There's no evidence that he distributed drugs from any other place other than this motorcycle shop. I don't know if he did or didn't. I can tell you the factual basis does not say whether he did or he didn't. It lists only the motorcycle shop. So, I mean, am I allowed to assume that this was his sole place of distribution? I don't think we can assume it one way or the other. It just doesn't say. And you certainly don't want to stand there and admit that there were other places where he was doing this kind of thing. I don't know. All right. I plead the fifth on that one. Well, we do know that he had substantial amounts of marijuana stashed at his house, and he was dealing marijuana, but not meth. Right. About a year prior, he was dealing with the marijuana. And it was not the same players either. It was a totally different circumstance. I don't know who he dealt with there. Opposing counsel brought up aiding and abetting. A few important points. No plea agreement. The PSR does not even include aiding and abetting in it. And he was not instructed on aiding and abetting at his rearrangement. So we don't have a jury verdict to affirm on aiding and abetting, nor do we have a guilty plea to it. He wasn't instructed on it, so it's a non-issue. Morgan was not just a defendant who happened to be laying on the couch when the authorities arrived. There was far more evidence there. He was not only laying on the couch. He was heard ordering people around. He was directing people to a closet where he had the drugs stashed. The person who rented the apartment was his cousin, who he referred to as his employee. And for many months, he was telling, I guess, the CI, I would assume, that this was our spot. This is where I deal my drugs. So there's far more evidence there than we have in this case. A few points. As I acknowledged, on March 30th, he did ask the UCs to leave. That is one bad fact for us. But that is the only time I see in this factual basis where he exercised any sort of control. And we know that the control — It's not enough? No, it's not. It's got to have a certain continuity and duration to it under Morgan. It can't be just any exercise of dominion and control. It has to have some duration to it. On 5-6, he didn't exercise any control whatsoever. The government says that Martinez was just sort of this guy. He didn't get the enhancement, which is interesting, which shows it is defendant-specific. He says that Martinez was just sort of this there-sometimes kind of guy. Martinez was there a lot. Martinez was involved in a separate deal with Negretto on March 2nd. Martinez and Negretto, according to their factual bases, were seen dealing drugs without Lee anywhere to be seen. In fact, the factual bases for those two say that they were frequently seen dealing drugs. Martinez didn't get the enhancement. So there was a defendant specificity to applying this enhancement here. I think what it really comes down to here is there's an attempt to merge these two prongs. And if these two prongs are merged to mean simply because somebody distributes out of premises, the enhancement applies, then the maintaining— What do you want us to do and what kind of instructions do you want us to render if we rule in your favor? In my opinion, the record does not factually support application of this enhancement. As to Mr. Lee— I'm asking you what instructions should we give to the district court if we rule in your favor? To reverse and remand without application of the enhancement. Not to reconsider, not to— No, because I don't think—we have a factual basis. There's really not a dispute about the facts here. There's a dispute about whether the facts are sufficient under Note 12 and this Court's precedent to satisfy the standard for maintain. Maintain focuses on control. Possessory interest is— Your point of view, and I guess I fully understand, is you would just kick it back to the district court and tell them to wipe out the enhancement— To take off the minus 2 and— And our new judgment. Right. Okay. The Court has no—I see my time has expired. Thank you so much. Thank you, Counsel. The Court will take this matter under advisement.